**REPUBLIC NAT. BANK OF ST. LOUIS, MO., et al. v. FIRST STATE BANK OF OILTON et al.**

No. 14919—Opinion Filed April 7, 1925.

Rehearing Denied June 23, 1925.

1. **Contracts — Construction of Different Instruments as Constituting One Contract.**

It is a general rule of law that written agreements, one being supplementary to the other, should be construed together as constituting one contract, and this is true although not dated at the same time, yet they refer to the same subject-matter, and on their face show that each was executed as a means of carrying out the intent of the other.

2. **Escrows—Wrongful Delivery—Effect.**

Where an instrument is placed in escrow to be delivered on the performance of certain conditions, and possession of the escrow is obtained without performance of the conditions, no title passes.

3. **Bills and Notes—Conditional Delivery—Effect.**

Where the maker of a note delivers it to the payee, or to some third person, with the agreement that it shall not be delivered and become operative until the happening of a certain contingency or the performance of a certain condition, and where neither the contingency has occurred nor the condition been performed, the note never became operative, and an action thereon by the payee or his assignee with notice cannot be maintained.

4. **Evidence—Superseded Pleading as Admission.**

Matters of defense set up in an answer which has been superseded by an amended answer, complete within itself, and which does not make the original answer a part thereof, by reference or otherwise, are not conclusive upon the defendant, but may be introduced in evidence as admissions against interest, subject to be denied or explained by the defendant, and the question raised between the allegations in the original answer and the testimony denying or explaining such allegations is a question of fact for the jury.

5. **Trial — Instructions on Weight of Evidence.**

The court, in its instructions to the jury should not call attention to particular facts, in evidence in such a manner as to amount to an intimation of the court's opinion as to the weight of the evidence.

6. **Same—Duty to Instruct on Issues.**

It is the duty of the court to submit to the jury, and give instructions thereon, any issue, theory or defense, where there is competent evidence reasonably tending to support the same.

(Syllabus by Ruth, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Creek County; Fred A. Speakman, Judge.

Action by First State Bank of Oilton against Riverside Oil & Refining Company and M. L. Harris to recover on promissory notes. Harris filed answer and cross-petition for judgment and foreclosure of lien. Court directed verdict for plaintiff, First State Bank, and jury rendered verdict against Riverside Oil & Refining Company in favor of Harris, and defendant Riverside Oil & Refining Company appeals. Reversed and remanded.

Twyford & Smith and W. R. Withington, for plaintiff in error.

Hughes & Foster, for defendant in error M. L. Harris.

C. E. Thomas, for defendant in error First State Bank.

Opinion by RUTH, C. The plaintiff, First State Bank of Oilton, filed its action against the defendants, Riverside Oil & Refining Company and M. D. Harris, to recover judgment on six promissory notes of $1,000 each, alleged to have been executed on February 20, 1922, by the oil company in favor of Harris and indorsed by Harris for value, before maturity, and without notice of any infirmities, to the plaintiff.

By leave of the court, plaintiff filed its amended petition and the oil company filed its verified answer, and by leave of the court subsequently filed a verified amended answer, consisting of a general denial, and for further defense alleges it executed the notes and forwarded them to the plaintiff bank, with the following letter:

"Riverside Oil & Refining Company, 835-836
  "Kennedy Building, Tulsa, Oklahoma.
                    "February 20th, 1923.

"First State Bank,
  "Oilton, Oklahoma.
        •    "Attention Mr. Abshire.

"Enclosed herewith find seven promissory notes of $1,000 each dated February 20th and due in ninety days, with eight per cent. from maturity, payable to M. L. Harris. This is in keeping with our agreement with Mr. Harris for the completion of the piling work on the river.

"Under the terms of our contract he was to furnish us with a bond guaranteeing us against loss or liability under material or mechanics' liens.   He has never furnished this bond, so it will therefore be necessary for him to furnish us with a release of any lien claims by the respective employees, and firms and individuals who furnished material for this job.   It will be necessary for you to get the enclosed releases signed by the different men who have worked for him on this piling work, and the lumber and hardware dealers and other material men who have furnished material for the work.

"When these releases have been properly signed, you at liberty to deliver the notes to Mr. Harris.

"Yours very truly,
      "Riverside Oil and Refining Company.
              "By O. O. Owens."

The answer alleges that disregarding the instructions in the letter, the plaintiff had Harris come to the plaintiff's bank, on February 21, 1922, and transfer four of said notes, by indorsement, to the plaintiff for a past indebtedness, and before any releases of leins were signed, and in violation of the trust imposed upon the plaintiff, and

accepted by it, and the notes never became effective as an obligation of the defendant oil company.

The amended answer further alleges that the defendant oil company entered into a contract with Harris to drive certain piling around oil wells in the river bed; alleges breach of contract, and claims set off against the notes in the sum of $4,050. Defendant Harris moved to make the Republic Bank of St. Louis a party defendant, as that bank held a mortgage against the property of the Riverside Oil Company.   Harris filed his answer to the plaintiff's petition and admits all the allegations in plaintiff's petition, and in his cross-petition Harris alleges he is the owner and holder of note No. 7, for $1,000, that he filed a lien against the oil company's property on February 20, 1922, and prays judgment against the Riverside Oil Company, and for foreclosure of this lien.

Plaintiff, in its reply, admits the receipt of the notes and letter of instructions; alleges the conditions in the letter were complied with; that it had no knowledge of the nonperformance of the Harris contract for which the notes were given, or of the counterclaim.

Defendant Riverside Oil Company filed its answer to the cross-petition of Harris, and upon issues joined the cause was tried to a jury.

After all parties had introduced testimony and rested, the defendant oil company requested certain instructions, which were by the court denied and the oil company excepted.

The court thereupon instructed the jury to return a verdict for the plaintiff, First State Bank, against the Riverside Oil Company, for $6,000, interest, and attorneys' fees, and submitted the question of the right of Harris to recover on the remaining note of $1,000, to the jury, and verdict was found for Harris; judgment rendered thereon, from which judgment the Riverside Oil Company appeals, and assigns six specifications of error and presents the same under five heads or "propositions" which will be considered in their order.

The evidence discloses that Riverside Oil Company and M. L. Harris entered into a contract dated January 7, 1921, by the terms of which Harris was to drive piling in the bed of the Cimarron river to protect the company's oil wells from river water. The contract provided for driving not less than 500 piling, "and such additional piling as the oil company might see fit to have

driven," and at points designated by the oil company. After Harris had driven certain piling the oil company determined, that additional piling should be driven at places designated by it, and on October 13, 1921, the oil company forwarded to M. L. Harris a letter, a portion of which is as follows:

"Tulsa, October 13th, 1921."

M. L. Harris,

"Oilton, Oklahoma,

"Dear Sir: Pursuant to our conversation, Tuesday, October 11, at which time you proposed to continue the work of driving piling in the river bed on our lease, it is my understanding that you will furnish all piling which has not been included in your itemized bill of recent date, and in addition to the above mentioned piling, you will furnish enough additional piling to drive a double row of piling from our No. 13 well where some piling has already been driven, down stream along a designated course to approximately sixty feet past our well No. 8."

The letter further specifies 30 foot piling at designated points, and the contract of January 7, 1921, provided that piling should be driven down to bed rock, or until the piling "broomed" at the lower point; and further provides that Harris will replace at his own expense any piling washed out or otherwise lost or destroyed, and furnish the oil company a perfect completed contract. The letter then provides that upon completion of the whole contract Harris is to receive one note of $10,000 payable 90 days after date.

Upon receipt of this letter, Harris wrote the following acceptance thereon:

"The above conditions are accepted with the understanding that twenty-five foot piling are to be used for shore piling at all points not designated for thirty foot shore piling.

"Accepted, M. L. Harris."

The proposition is advanced by the plaintiff and defendant Harris that the letter of October 13, 1921, was a separate and distinct contract from the one of January 7, 1922, but with this we cannot agree as the original contract provides for the driving of such additional piling as the oil company might elect, at a stipulated price per foot and the letter authorizing the continuation of the driving of piling and designating the places to be driven was but supplementary to the original contract, and it is a general rule of law that "written agreements, one being supplementary to the other, should be construed together as constituting one contract; and this is true although not dated at the same time, yet they refer to the same subject-matter, and on their face show that each was executed as a means of carrying out the intent of the other." Nelson v. Golden, 84 Okla. 29, 202 Pac. 308; Brake v. Blain, 49 Okla. 186, 153 Pac. 158; Berquist v. Thomas, 86 Okla. 214, 207 Pac. 964; Charles E. Knox Oil Co. v. McKee, 101 Okla. 56, 223 Pac. 880; Smith v. Ferguson, 96 Okla. 150, 221 Pac. 447.

The record further discloses that the work was completed about February 15, 1922, and the oil company paid Harris $3,-000 in cash on February 20, 1922, and at the same time executed seven notes for $1,-000 each, payable to Harris 90 days from the 20th day of February, 1922, and forwarded the notes to plaintiff, First State Bank, together with the letter of instructions relating to their future delivery to Harris upon receipt by plaintiff of a release signed by all laborers and materialmen, as in the letter set forth. The president of the plaintiff bank admits the receipt of the notes and letter of February 21, 1922, and on the same day the plaintiff had Harris come to the bank and indorse four of them over to the bank at a discount of 5%, Harris paying the bank $2,250 owed the bank by Harris, and the notes never appeared to have been out of the possession of the bank, except so long as each one was under the hand of Harris while he indorsed the same, the bank retaining all the notes as collateral. The president of the bank testified that he did not know when the release of liens was signed, and the evidence discloses the fact that releases were not obtained from all persons performing labor on the oil company's leases, under the contract with Harris, but on April 20, 1922, or two months after the notes were indorsed to the plaintiff, the plaintiff claims to have forwarded releases containing the signatures of materialmen and some of the laborers.

The court has repeatedly held that where an instrument is placed in escrow, to be delivered on the performance of certain conditions, and possession of the escrow is obtained without performance of the conditions, no title passes. Hunter Realty Co. v. Spencer, 21 Okla. 155, 95 Pac. 757; Taylor v. Harkins, 74 Okla. 206, 178 Pac. 117; Hallam v. Bailey, 66 Okla. 46, 166 Pac. 874; Hallem et al. v. Claggett, (3 cases) 66 Okla. 53, 166 Pac. 880; Wood v. French, 39 Okla. 685, 136 Pac. 734; Powers v. Rude, 14 Okla. 381, 79 Pac. 89.

And even though the notes had actually been delivered to Harris, in the instant case, with a condition precedent attached

of which the plaintiff had notice, the plaintiff could acquire no title until the condition had been performed.

In Tovera v. Parker et al., 35 Okla. 74, 128 Pac. 101, this court cited with approval 4 A. & E. Ency. of Law. p. 204, where it is said:

"Bills and notes may be delivered to take effect, not at all events, but conditionally upon the happening of a future contingency, and this may be accomplished either by a formal delivery in escrow into the hands of a third person for the promisee, or by delivery to the promisee himself in the nature of an escrow; the intervention of a third person not being absolutely necessary according to the better doctrine, to make the transfer in effect conditional."

Recognizing this doctrine in Farmers Bank of Roff v. Nichols, 25 Okla. 550, 106 Pac. 835, 138 Am. St. Rep. 931, 21 Ann. Case 1160, this court said:

"The authorities hold that where the maker of a note delivers it to the payer with the agreement that it shall not take effect until the happening of a certain contingency or the performance of a certain condition, and where neither the contingency has occurred nor the condition been performed, the note never became operative; and an action thereon by the payee or his assignee with notice cannot be maintained. Johnson v. First National Bank of Morristown, 24 Ill. App. 352; Mendenhall v. Uhlrich, 94 Minn, 100, 101 N. W. 1057; Myrick v. Purcell et al., 95 Minn. 133, 103 N. W. 902, and this is true although the contemporaneous agreement be parol."

Graham et al. v. Rommell, 76 Ark. 140, 88 S. W. 899; Meahlin v. Mutual Res. Fund Life Assn., 2 Ind. T. 396, 51 S. W. 1063; Joyce on Defenses to Com. Paper, sec. 310. See, also, Burke v. Dulaney, 153 U. S. 233, 14 Sup. Ct. at page 818, 38 L. Ed. 698; Jones v. Citizens State Bank, 59 Okla. 393, 135 Pac. 373; Gamble v. Riley, 39 Okla. 363, 135 Pac. 390; Adams v. Thurmond, 48 Okla. 189, 149 Pac. 1141; Horton v. Birdsong, 35 Okla. 276, 129 Pac. 701; Hayes et al. v. State Ex. Bank, 54 Okla. 124, 153 Pac. 1112; Dunkin v. Waurika National Bank, 62 Okla. 175, 162 Pac. 788.

The plaintiff in the instant case having acquired no title to the notes by reason of the nonperformance of the conditions imposed, the notes were subject to all defenses as though they were in the hands of the original payee.

During the trial the court admitted in evidence the original answer of the Riverside Oil & Refining Company wherein it was stated that:

"Defendant states that said notes were executed and delivered to the said M. L. Harris in keeping with a certain written agreement entered into between this defendant and the said M. L. Harris, on the 7th day of January, 1921."

The amended answer, filed with consent of the court, sets up the true facts of delivery to the bank with letter containing conditions precedent to delivery, and the conditional delivery is supported by the plaintiff's testimony, and under the holding of the authorities cited, supra, it was immaterial whether delivery was made to Harris or not, the bank admitting it had actual notice of the conditions.

In Letcher v. Maloney, 70 Okla. 65, 172 Pac. 972, it is held:

"The allegations in a petition which has been superseded by amended petition complete within itself, and which does not make the original petition a part thereof by reference or otherwise, are not conclusive upon the plaintiff, but may be introduced in evidence as admissions against interest, subject to be denied or explained by the plaintiff, and the question raised between the allegations in the original petition and the testimony denying or explaining such allegations is a question of fact for the jury." And this principle applies as we" to the answer.

After all parties had rested the court instructed the jury:

"That there has been evidence introduced in this case to the effect that defendant admits the execution and delivery to the said M. L. Harris of the above described notes; and since the defendant oil company is claiming no damages against the First State Bank of Oilton, plaintiff herein, by reason of its delivery of said notes without the release of the lienholders as provided for in the escrow agreement, that it is estopped from denying the delivery of said notes by the bank to the said M. L. Harris."

This instruction is clearly erroneous, as the court assumed that a statement in an abandoned pleading is conclusive against the pleader, which constitutes an error of law under Letcher v. Maloney, supra, and for the further reason that it is an invasion of the province of the jury.

"A charge that in effect assumes the existence and proof of disputed facts, or which restricts or interferes with the discretion of the jury is erroneous." Chi., R. L. & P. Ry. Co. v. Stibbs, 17 Okla. 97, 87 Pac. 293; Archer v. United States, 9 Okla. 569, 60 Pac. 268.

"The court, in its instructions to the jury, should not call attention to particular facts in evidence in such a manner as to amount

to an intimation of the court's opinion as to the weight of the evidence." Bilby v. Owen. 74 Okla. 158, 181 Pac. 724.

To the same effect are Goodwin v. Greenwood, 16 Okla. 489, 85 Pac. 1115; Midland Valley Ry. Co. v. Featherstone, 32 Okla. 837, 123 Pac. 1123; St. Louis & S. F. R. Co. v. Wilson, 32 Okla. 752, 124 Pac. 326; Grayson v. Damme, 59 Okla. 214, 158 Pac. 387.

Instruction No. 2, given by the court, is as follows:

"The jury are instructed that there has been no testimony offered in this case as a defense against the said notes held by the bank. You are therefore instructed to return a verdict in favor of the First State Bank of Oilton, and against the Riverside Oil & Refining Company for the sum of $6,000 together with interest and attorneys' fees as provided in said notes."

In view of the evidence hereinbefore referred to showing conditional delivery to the bank; the breach of faith on the part of the bank, and its defective title to the notes, the second instruction was clearly erroneous.

"Where there is any controverted question of fact before the jury, it is error for the court to direct a verdict." Richardson v. Fellner, 9 Okla. 513, 60 Pac. 270; Farmers State Bank v. Spencer, 12 Okla. 597, 73 Pac. 297; Sovereign Woodmen of the World v. Welch, 16 Okla. 188, 83 Pac. 547; Lane v Choctaw, O. & G. R. Co. 19 Okla. 324, 91 Pac. 883. To the same effect are Central Coal & Lumber Co. v. Jones, 88 Okla. 219, 212 Pac. 606; Clevenger v. Crosby, 89 Okla. 55, 213 Pac. 76.

It further appears from the record that the plaintiff bank purchased the fifth $1,000 note from Harris on March 19, 1922, one month before any release of liens was delivered to the Riverside Oil Company. and released the sixth note to Harris to enable him to pay it to an automobile sales company, and the bank immediately purchased or discounted the sixth note for the automobile company on May 12, 1922, and after the bank had received a copy of a letter sent by the Riverside Oil Company to Harris, wherein the oil company notified Harris that certain piling had been washed away because of the fact that Harris had driven 25 foot piling where he should have driven 30 foot piling and notifying the bank and Harris that the oil company would not pay the notes until an adjustment was made, and if Harris was not in a position to repair the damages and replace the piling according to contract, the oil company would have to do so immediately so as to protect its wells from the river, and de-

duct the cost thereof from the total sum due on the notes, and in view of this evidence we can find no theory, viewing it from any angle, upon which a directed verdict for plaintiff could be sustained against the defendant oil company.

With reference to the action by Harris on his cross-petition to recover $1,000 with interest and attorney fees, from the Riverside Oil Company, the court submitted the cause to the jury upon the following instruction No. 4:

"The jury are instructed that the defendant, M. L. Harris, is entitled, under the undisputed testimony in this case to recover on the promissory note in evidence in this case the sum of $1,000 together with interest and attorneys' fees, therein set forth, subject only to the set-off. claimed by the defendant Riverside Oil & Refining Company, for damages claimed to have been occasioned on account of the defective work on well number one; and the only question for the jury to determine is whether or not the defendant Riverside Oil & Refining Company is entitled to any damages, and that question you will determine under the instructions heretofore given."

As this court views the instruction, the court committed reversible error in giving the same as the law in the case, and confining the jury to the one issue of damages for defective work, and breach of contract. The pleadings tendered the issue of nondelivery to Harris, failure to have releases signed or give bond against lien claims, and the notes were not to be delivered to Harris until the conditions contained in the letter had been performed. The evidence of the plaintiff itself discloses that on April 20, 1922, the plaintiff bank forwarded to the oil company a release of liens, accompanied by a letter stating that it (the bank) understood the releases had been signed by all but one man, to whom Harris owed four or five hundred dollars for labor.

The letter further stated the bank had delivered all the notes to Harris except note No. 7, for $1,000 and assured the oil company this note would be held by the bank until the matter was adjusted to the satisfaction of the oil company, and if the note was paid when due, that it was understood between the bank and the oil company that the money would be held by the bank until released. This letter was signed by the witness, F. W. Abshire. president of the plaintiff bank.

It further developed that some five or six men had not signed releases, among them Ben Johnson, to whom Harris still owed some $500. The oil company, within

24 hours of the receipt of this letter, and on April 22, 1922, wrote the letter hereinbefore referred to, in which it stated it would not pay the notes until all conditions of the contract were complied with and the defective work made good, yet notwithstanding the fact that the bank knew the releases were not fully signed as required, and that a claim was being made for defective work, the bank delivered note No 7 to Harris.

Under the issues thus raised and the evidence introduced the court manifestly erred in confining the issue between Harris and the oil company to a question of damages for defective work.

The defendant Riverside Oil & Refining Company submitted certain instructions which the court refused to give, and to the ruling of the court the oil company excepted and assigns error.

All the requested instructions, one to nine, proceeded on the theory set out in the amended answer, that the seven notes were negotiated in violation of the instructions sent with the notes to the bank and by reason thereof the title of the plaintiff and of M. L. Harris to the said notes was defective and neither plaintiff nor Harris was entitled to recover on the notes.

The evidence touching the delivery of the notes in disregard of the instructions and conditions imposed by the letter has been discussed heretofore and will not be repeated.

It is a well-settled principle of law that either party to an action has the right to have his theory of his claim or defense submitted to the jury, when there is competent evidence reasonably tending to support the same.

"It is the duty of the court to submit to the jury, and give instructions thereon, any issue, theory, or defense which the evidence tends to support. The right is not affected by the fact that there is countervailing testimony." Klein v. Mulhausen, 83 Okla. 21, 200 Pac. 436; Campbell v. Thomas-Godfrey Land & Loan Co., 81 Okla. 201, 197 Pac. 452; Bristow v. Central State Bank, 68 Okla. 195, 173 Pac. 221; Mountcastle v. Miller, 66 Okla. 166 Pac. 1057; Menten v. Richards, 54 Okla. 418, 153 Pac. 1177, and numerous other cases decided by this court.

For the reasons herein stated, the judgment of the trial court should be reversed and the cause remanded with instructions to grant the defendant Riverside Oil & Refining Company a new trial.

By the Court: It is so ordered.

Note—See under (1) 13 C. J. pp. 528, 529 § 487; (2) 21 C. J. p. 883 § 29; (3) 8 C. J. pp. 206, 208 § 336; (4) 22 C. J. pp. 337, 422, 426 §§ 380, 505, 507; (5) 38 Cyc. pp. 1647, 1676; (6) 38 Cyc. pp. 1623, 1633.